UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIE POWELSON,<br><br>    Plaintiff,<br><br>  v.<br><br>CURTIS HAVEL, et al.,<br><br>    Defendants. | Case No. 24-cv-08245-JST<br><br>**ORDER RE MOTIONS TO DISMISS AND MOTION TO STRIKE**<br><br>Re: ECF No. 36, 38, 39 |

Before the Court are the RBRA Defendants'[1] motion to dismiss, ECF No. 36, and motion to strike, ECF No. 38, as well as the SPD Defendants'[2] motion to dismiss, ECF No. 39. The Court will grant the motions to dismiss in part and deny them in part. The Court declines to address the motion to strike because it involves claims that the Court dismisses without leave to amend.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Robbie Powelson brings this action based on events that took place in March and May 2021, in which he alleges that he was the victim of unlawful arrests based on fabricated evidence and leading to malicious prosecution for his protest against the seizure and destruction of

---

[1] RBRA Defendants include the Richardson Bay Regional Agency ("RBRA"), Curtis Havel, James Malcolm, and Beth Pollard.
[2] SPD Defendants include the Sausalito Police Department ("SPD"), the City of Sausalito, John Rohrbacher, Bill Fraas, Stacie Gregory, Brian Mathers, Edgar Padilla, Steven Vereios, and Adam Clerici. SPD Defendants argued in their opening brief that Powelson failed to join Clerici and the City of Sausalito as indispensable parties under Rule 19. ECF No. 39 at 16. After Powelson responded that Clerici and the City of Sausalito were in fact both named as defendants in the amended complaint and properly served, ECF No. 47 at 6, SPD Defendants appear to have conceded this argument on reply, *see generally* ECF No. 49. Indeed, counsel for SPD Defendants has filed their briefing on behalf of Clerici and the City of Sausalito. *See id.* at 9. The Court thus does not address SPD Defendants' joinder arguments.

United States District Court<br>Northern District of California

boats belonging to unhoused residents in the Richardson Bay area of Sausalito, California. Powelson had a history of protesting against the alleged displacement of individuals living on boats in the Richardson's Bay area, including involvement in a lawsuit against the City of Sausalito. *See* ECF No. 34 ¶¶ 10, 41, 44 (citing *Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 651 (N.D. Cal. 2021), *modified in part sub nom. Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito*, No. 21-CV-01143-EMC, 2021 WL 2141323 (N.D. Cal. May 26, 2021)).  Powelson's amended complaint focuses on the events that took place on three separate days.  For the purpose of resolving the motions to dismiss, the Court accepts as true the allegations in the first amended complaint, ECF No. 34.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

On March 24, 2021, Powelson attempted to prevent the warrantless seizure and destruction of an unoccupied houseboat ("Houseboat") by Defendant Curtis Havel, the Harbormaster of Defendant RBRA.  ECF No. 34 ¶¶ 2–3.[3]  Havel and his colleague James Malcolm directed Marty Plisch of the U.S. Army Corps of Engineers ("USACE") to destroy the Houseboat by dragging its hull on a corrugated concrete ramp.  *Id.* ¶ 2.  At the request of the family of the person who lived on the Houseboat, Powelson kayaked to the vessel to protest its destruction.  *Id.* ¶ 3.  In response, Havel revved his patrol boat engine and nearly struck Powelson with his patrol boat.  *Id.* ¶ 4. Havel then called the SPD and made a criminal complaint against Powelson, accusing him of obstructing official duties under Penal Code § 148(a)(1).  *Id.* ¶ 5.  SPD Officers Stacie Gregory and Brian Mathers responded to the scene, and despite being informed by Havel that Havel had no legal authority to destroy the vessel, they filed charges against Powelson.  *Id.* ¶¶ 5, 9–10.  The charges were allegedly part of a conspiracy between RBRA, SPD, and the USACE to retaliate against Powelson for his activism.  *Id.* ¶¶ 10–13.

The following day, Powelson returned to the Houseboat—which had now been moved along the shoreline—to again prevent its destruction.  *Id.* ¶ 36.  Havel, Malcolm, and Plisch

---

[3] The first amended complaint contains two sets of numbered paragraphs—one at the beginning of the complaint to describe the procedural history, and one restarting in the body of the complaint. *See generally* ECF No. 34.  Unless otherwise noted, the paragraph citations here refer to those contained within the body—beginning on page 11— of the amended complaint.

reported the Houseboat stolen despite being informed that it was in the lawful possession of an individual named Michael Ortega, who was also on the scene. *Id.* ¶¶ 40, 46. SPD Officers Edgar Padilla, Steven Vereios, and Adam Clerici, under the supervision of Stacie Gregory, Bill Fraas, and John Rohrbacher, arrested Powelson—dragging him roughly through the water and dirt. *Id.* ¶¶ 37, 62. Padilla initially charged Powelson with trespassing under Penal Code § 602(k) (interfering with a lawful business or property right) and later amended the charge to a violation of Penal Code § 602(o) (refusing to leave private property after being asked). *Id.* ¶¶ 40, 43. Powelson alleges that the officers should have known his conduct did not constitute trespassing because the boat was not on land, but in public waters (below the high tide mark). *Id.* ¶¶ 38–40. Moreover, Ortega had informed the officers that Ortega was the owner of the Houseboat, that Powelson had permission to be on the Houseboat, and that he planned to move the boat at high tide. *Id.* ¶ 40. As with the events of the prior day, Powelson alleges that this encounter was part of a broader retaliatory conspiracy against him. *Id.* ¶ 41.

On May 25, 2021, Powelson once again protested the unlawful destruction of houseboats by the RBRA and USACE. SPD Officer Brian Mathers charged him with trespassing on private property under Penal Code § 602(m), but Powelson contends that he stood at the shoreline adjacent to Marina Plaza on state-owned land below the highwater mark—rather than on Marina Plaza property itself. *Id.* ¶¶ 65–67. Powelson alleges that Mathers fabricated a sworn affidavit alleging facts to the contrary. *Id.* ¶¶ 68–71. Powelson next left the shore and swam to a group of boats that were being destroyed by RBRA—including Havel and Malcolm—and USACE. *Id.* ¶¶ 72–73. Havel then asked Mathers to arrest Powelson for interfering with his duties. *Id.* ¶ 73. Mathers initially declined to arrest Powelson but later conferred with others (Does 1–10) and filed trespassing charges against Powelson based on Havel and Malcolm's statements. *Id.* ¶¶ 76–77, 80.

The charges resulting from these three incidents all led to a criminal prosecution that was dismissed on April 25, 2024, through Powelson's completion of a diversion program. *Id.* ¶¶ 14, 33, 70; *id.*, Procedural History ¶ 4.

3

United States District Court
Northern District of California

### B.      Procedural History

The charges filed stemming from the events in March and May 2021 resulted in the prosecution of Powelson in the case *People v. Robert Thomas Bruce Powelson*, CR216238. *Id.*, Procedural History ¶ 1. In June 2021, the Superior Court dismissed those charges, granting Powelson's demurrer that the charges facially lacked probable cause. *Id.* ¶ 2. Soon after, Powelson filed administrative claims against the RBRA, SPD, and USACE for malicious prosecution and false arrest. *Id.* However, the Marin County District Attorney then soon refiled criminal charges under a new case number (CR216238A), which Powelson contends "mooted" his administrative claims because the refiling barred him from pursuing a lawsuit on his claims due to the *Younger v. Harris*[4] abstention doctrine. *Id.* ¶ 3.

On April 25, 2024, the charges against Powelson in CR216238A were "terminated with prejudice." *Id.* ¶ 4. And on September 25, 2024, Powelson submitted administrative claims for damages to RBRA, SPD, and USACE, again alleging that the prosecutions and arrests were made without probable cause and carried out in retaliation against his lawful protests. *Id.* ¶ 5. RBRA, USACE, and SPD rejected those claims in October 2024 on the basis that those claims were outside the statute of limitations and also precluded by Powelson's previous filing of claims. *Id.* ¶ 6.

Powelson filed this action on November 21, 2024. ECF No. 1. He then filed an amended complaint on February 28, 2025, asserting a number of federal and state law claims, including claims under Section 1983, negligence, the California Bane Act, and the Federal Tort Claims Act. ECF No. 34.

## II.      JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331.

## III.     LEGAL STANDARD

### A.      Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the

---

[4] 401 U.S. 37, 46 (1971).

1  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is

2  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

3  a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

4  Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a

5  plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain

7  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

8  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A

9  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

10 the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court

11 must "accept all factual allegations in the complaint as true and construe the pleadings in the light

12 most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072. However, the Court is not

13 "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

14 or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

15 (internal quotation marks and citation omitted).

16       **B.    Anti-SLAPP**

17       A Strategic Lawsuit Against Public Participation under Cal. Civ. Code § 425.16 is one in

18 which "the plaintiff's alleged injury results from petitioning or free speech activities by a

19 defendant." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). California's

20 anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it "aris[es] from

21 any act of that person in furtherance of the person's right of petition or free speech under the

22 United States or California constitution in connection with a public issue." Cal. Civ. Proc. Code

23 § 421.16(b)(1). The California legislature has instructed that the statute should be "construed

24 broadly." *Id.* § 425.16(a). "Motions to strike a state law claim under California's anti-SLAPP

25 statute may be brought in federal court." *Vess*, 317 F.3d at 1109. However, "the anti-SLAPP

26 statute does not apply to federal law causes of action." *Doe v. Gangland Prods., Inc.*, 730 F.3d

27 946, 955 n.3 (9th Cir. 2013) (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir.

28 2010)).

5

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A motion to strike pursuant to the anti-SLAPP statute entails a two-part inquiry. First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendants' rights of petition or free speech." *Vess*, 317 F.3d at 1110 (quoting *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 63 F. Supp. 2d 1127 (N.D. Cal. 1999)). The statute does not apply where the "protected conduct is 'merely incidental' to the unprotected conduct." *Travelers Casualty Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1181 (9th Cir. 2016) (per curiam) (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005)). Rather, its applicability turns on "the principal thrust or gravamen of the plaintiff's cause of action." *Peregrine Funding*, 133 Cal. App. 4th at 672-73 (quoting *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 414 (2004)). The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are ultimately beside the point.'" *Vess*, 317 F.3d at 1110 (quoting *Equillon Enters., LLC v. Consumer Cause, Inc*., 29 Cal.4th 53, 67 (Cal. 2002)).

Second, "once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess*, 317 F.3d at 1110 (quoting *Globetrotter Software,* 63 F. Supp. 2d at 1129). If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. Cal. Civ. Proc. Code § 425.16(b)(1). "[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient sustainability exists to support a judgment for the plaintiff." *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010) (alteration in original) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)). "[T]hough the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Hilton*, 599 F.3d at 903 (emphasis in original) (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)).

United States District Court
Northern District of California

## IV.    REQUEST FOR JUDICIAL NOTICE

"As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  "When 'matters outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56," unless those matters satisfy the "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of Evidence 201."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting Fed. R. Civ. P. 12(d)).  The Ninth Circuit has expressed concern with the practice of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage."  *Id.*  The Ninth Circuit also cautioned that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."  *Id.* at 999.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.* (quoting Fed. R. Evid. 201(b)).  "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 688 (alteration in original) (quotation marks and citation omitted).

RBRA Defendants request that the Court consider six documents under the incorporation-by-reference doctrine or take judicial notice of those documents.  ECF No. 37.  Exhibits A, C, and E are each claim forms submitted by Powelson to the RBRA, dated July 7, 2021; September 20, 2021; and September 17, 2024, respectively.  Exhibits B, D, and F are each notices of rejection of Powelson's claim by the RBRA, dated July 23, 2021; September 24, 2021; and September 26,

7

2024, respectively.

The Court finds that all six exhibits have been incorporated by reference. Powelson does not dispute the authenticity of any of these documents, and the amended complaint references Powelson's submission of administrative claims to the RBRA in its discussion of the procedural history leading up to this action. *See* ECF No. 34 at 4–5. The Court grants the request to notice Exhibits A, B, C, D, E, and F as to their existence but declines to consider the documents on the merits beyond the fact of Powelson's various claim submissions and the RBRA's issuance of rejection notices on those dates.

## V.    DISCUSSION

### A.    Time-Barred Claims

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed based on the statute of limitations only when "the running of the statute is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

#### 1.    Section 1983 Claims

The RBRA Defendants and SPD Defendants each argue that Powelson's Section 1983 claims—other than his claims of malicious prosecution—are time-barred because Powelson filed this action more than two years after the events of March and May 2021. *See* ECF No. 49 at 2–3; ECF No. 36 at 15. In response, Powelson argues that his claims did not begin to accrue until the termination of the prosecution against him on April 24, 2024. *See* ECF No. 46 at 8; ECF No. 47 at 6–7.

Powelson brings claims under Section 1983 for the violation of the First Amendment, fabrication of evidence, and malicious prosecution.[5] Additionally, though not labeled as a separate cause of action, Powelson also appears to assert a claim for *Monell*[6] liability against RBRA. *See*

---

[5] Powelson clarifies in his oppositions that he does not assert any Section 1983 claim for a violation of the Fourth Amendment separate from his claim for malicious prosecution. *See* ECF No. 46 at 14.

[6] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

United States District Court
Northern District of California

ECF No. 46 at 14 (citing ECF No. 34 at 11).  The statute of limitations for Section 1983 claims is borrowed from the state personal injury statute of limitations.  *See Owens v. Okure*, 488 U.S. 235, 240–41 (1989).  "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999)).  California's statute of limitations for personal injury claims is two years.  *See* Cal. Civ. P. Code § 335.1; *Holt v. Cnty. of Orange*, 91 F.4th 1013, 1018 (9th Cir. 2024).

The two-year statute of limitations for a malicious prosecution claim begins to accrue upon the date of favorable termination.  *See Peinado v. City & Cnty. of San Francisco*, No. C-11-1799 EMC, 2013 WL 163473, at *3 (N.D. Cal. Jan. 15, 2013).  Similarly, the Supreme Court has held that a fabricated-evidence claim also begins to accrue upon favorable termination of the challenged criminal proceedings.  *See McDonough v. Smith*, 588 U.S. 109, 114–20 (2019).

So while Powelson is correct that his § 1983 claims based on malicious prosecution and fabrication of evidence did not accrue until his favorable termination in April 2024, that principle does not apply to his remaining § 1983 claims.  Accordingly, because it is clear from the face of the complaint that Powelson's § 1983 claims for violations of the First Amendment and for *Monell* liability[7] are based on events from March and May 2021—more than two years prior to the filing of this action in November 2024—those claims are dismissed without leave to amend because they are barred by the applicable statutes of limitations.  *See Gonzalez v. Santa Clara Cnty.*, 2025 WL 523895, at *6 (N.D. Cal. Feb. 18, 2025) ("Because plaintiffs cannot render those claims timely through amendment, the dismissal of these claims is without leave to amend and with prejudice.").

---

[7] The Court also finds that Powelson has not made any factual allegations sufficient to identify any custom, policy, or practice that led to his injuries to support a *Monell* claim short of alleging that Havel was "a final policymaker of the RBRA."  *See* ECF No. 34 ¶ 2.  Powelson has thus failed to state a claim under *Monell*.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (to state a *Monell* claim a plaintiff must allege facts to support that a policy or custom existed).

United States District Court
Northern District of California

1               **2.**         **State Law Claims**

2       Powelson brings claims under California state law for violations of the Bane Act, Cal. Civ.

3 Code 52.1, and negligence, including specifically negligent training, supervision, and retention.

4 *See* ECF No. 34 ¶¶ 16–26, 99–114.

5               **a.**        **RBRA Defendants**

6       RBRA Defendants argue that Powelson's state law claims against them are time-barred by

7 the California Government Claims Act ("GCA") because Powelson failed to file this lawsuit

8 within six months of the RBRA's July 23, 2021, rejection of his administrative claim. In relevant

9 part, the GCA requires that a plaintiff must (1) file the state law tort claim with the relevant public

10 entity no later than six months after the cause of action accrued; and (2) file the lawsuit in state or

11 federal court no later than six months after the public entity's rejection notice is personally

12 delivered or deposited in the mail. Cal. Gov't Code §§ 911.2, 915, 945.6.

13       Powelson's responds that his state law claims are not time-barred because (1) under

14 *Heck v. Humphrey*, 512 U.S. 477 (1994), his malicious prosecution claim did not accrue until the

15 favorable termination of his criminal case on April 25, 2024; and (2) the district attorney refiled

16 identical claims after the superior court's initial dismissal and so—under principles of *Younger*

17 abstention—prevented Powelson from filing any lawsuit until April 25, 2024. ECF No. 46 at 7–8.

18       Under *Younger*, federal courts should abstain from granting injunctive or declaratory relief

19 that would interfere with a pending state court case. *Younger*, 401 U.S. at 41. In the absence of

20 "extraordinary circumstances," abstention in favor of state judicial proceedings is required if the

21 state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the

22 plaintiff an adequate opportunity to litigate his or her federal claims. *See Middlesex Cty. Ethics*

23 *Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32 (1982).

24       The Court rejects Powelson's first argument because the statute of limitations for his

25 federal malicious prosecution claim does not apply to his state-law claims.

26       As to Powelson's second argument, Powelson has not provided any legal authority

27 suggesting that the mere potential for *Younger* abstention to apply can serve to toll the applicable

28 state statute of limitations. On the contrary, courts have rejected applying *Younger* in this way.

United States District Court
Northern District of California

*See Buxton v. Hill*, , 2016 WL 3982874, at \*3–4 (W.D. Pa. June 23, 2016), *report and recommendation adopted*, 2016 WL 3977270 (W.D. Pa. July 22, 2016) ("*Younger* does not toll the statute of limitations for civil rights claims, but 'established a principal of abstention when federal adjudication would disrupt an ongoing state criminal proceeding.' *Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005). Accordingly, Plaintiff's reliance on *Younger* to toll the statute of limitations for him to bring his civil rights claims is misplaced."); *Ingram v. Jones*, 1995 WL 745849, at \*5 (N.D. Ill. Nov. 29, 1995), *opinion modified on denial of reconsideration sub nom. Ingram By & Through Ingram v. Jones*, 1997 WL 323538 (N.D. Ill. June 9, 1997) ("[T]he Court has neither discovered nor been presented with any reasoning to support the conclusion that the *Younger* abstention doctrine provides a vehicle for tolling a state statute of limitations."); *Phelps v. Klipfel*, 1991 WL 285279, at \*2 (N.D. Ill. Dec. 26, 1991) (explaining that the assumption that *Younger* abstention "required that the limitations statute be tolled until the state criminal proceedings were completed . . . was unfounded").

To the extent that Powelson's argument can be interpreted as one for equitable tolling, the Court finds that Powelson has not satisfied the high bar for tolling to apply. Equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Equitable tolling focuses on a plaintiff's excusable ignorance and the lack of any prejudice to the defendant." *Leong v. Potter,* 347 F.3d 1117, 1123 (9th Cir. 2003) (internal citation omitted). "The doctrine of equitable tolling 'has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period.'" *Id.* (quoting *Leorna v. U.S. Dep't of State,* 105 F.3d 548, 551 (9th Cir. 1997)). None of those circumstances are present here. Powelson had actual notice of the filing period because he knew about these state law claims as soon as the events of March and May 2021 transpired. Indeed, he knew to file and did file administrative claims with the RBRA, SPD, and USACE. *See* ECF No. 34, Procedural History, ¶ 5. That he subjectively believed that—under *Younger*—he could not bring these claims while the criminal charges were pending does not by itself justify tolling the state statutes of limitations.

1    Because Powelson failed to file any of his state law claims based on the events of March

2    and May 2021 within six months after he received the rejection notice from the RBRA as required

3    under the GCA, the Court dismisses his state law claims without leave to amend.[8]  *See Gonzalez*,

4    2025 WL 523895, at *6.

5                            **b.      SPD Defendants**

6    The SPD Defendants similarly argue that along with his federal claims, Powelson's state

7    law claims are all time-barred because he did not file this action until more than three years after

8    the statutory clock began running on those claims in March and May 2021.  ECF No. 39 at 15–16.

9    For Bane Act claims, courts apply either a two-year statute of limitations for liability

10   arising out of common law neglect or personal injury, as provided under Cal. Civ. Proc. Code §

11   335.1, or a three-year statute of limitations for statutory actions.  *See Gatto v. Cty. of Sonoma*, 98

12   Cal. App. 4th 744, 753–760 (2002); *see also Wilson v. City of Oakland*, No. C-11-05377 DMR,

13   2012 WL 669527, at *3 n.6 (N.D. Cal. Feb. 29, 2012).

14   As Powelson's claims arise out of personal injury, a two-year statute of limitations applies.

15   *See Mascorro v. City of San Diego*, 2023 WL 8115528, at *15 (S.D. Cal. Nov. 22, 2023) (holding

16   Bane Act claims involving personal injury to have two-year statute of limitations under Cal. Civ.

17   Proc. Code § 335.1).  Claims for injury resulting from negligence or negligent training are

18   similarly subject to a two-year statute of limitations under California law.  *See* Cal. Civ. Proc.

19   § 335.1.

20   In response, Powelson makes the same arguments discussed above—contending that

21   equitable tolling applies because he could not have filed this lawsuit while the criminal charges

22   were pending against him under *Younger* abstention.  ECF No. 47 at 7.  For the same reasons

23   previously discussed, the Court finds that equitable tolling does not apply under these

24   circumstances and dismisses Powelson's state law claims against the SPD Defendants for being

25   time-barred.  It dismisses those claims without leave to amend.

26

27   _____

28   [8] The Court also notes that Powelson's state-law claims against RBRA Defendants are also time-barred under the applicable state statutes of limitations, as discussed in the following section.

United States District Court
Northern District of California

1

2

United States District Court
Northern District of California

**B.      Failure to State a Claim**

      **1.      Malicious Prosecution**

To establish liability for a claim of malicious prosecution, a plaintiff must prove "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989)). Additionally, a plaintiff must show Defendants prosecuted for the purpose of denying a specific constitutional right. *Id.*

"To determine whether the litigation was commenced at the direction of the defendant, the Court looks to 'whether the defendant was actively instrumental in causing the prosecution.'" *Salcido v. City of Mountain View*, No. 24-CV-08833-NC, 2025 WL 1307811, at *8 (N.D. Cal. May 6, 2025) (quoting *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720 (1974)). "Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." *Id.* On the other hand, one "who merely alerts law enforcement to a possible crime . . . is not liable [for malicious prosecution] if, law enforcement, on its own, after an independent investigation, decides to prosecute." *Stamas v. Cnty. of Madera*, No. CVF09-0753LJOSMS, 2010 WL 1416866, at *13 (E.D. Cal. Apr. 8, 2010) (quoting *Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 898 (1983)) (internal quotation marks omitted).

In a malicious prosecution case, "[p]robable cause for the initiation of a criminal prosecution exists where 'it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (quoting *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006)). Whether probable cause existed for a criminal prosecution is a question of law; however, if there is a dispute regarding the facts on which the defendant brought the prior action, "they must be passed upon by the jury before the court can determine the issue of probable cause." *Sheldon*, 47 Cal. 3d at 877.

a.      RBRA Defendants

The RBRA Defendants argue that Powelson's malicious prosecution claims against them should be dismissed because (1) they did not initiate or control the prosecution against him and (2) Powelson's allegations that they acted maliciously or in retaliation are conclusory and do not connect their actions to any improper motive or personal animus.  ECF No. 36 at 21–22.  They further contend on reply that any arguments relating to "probable cause" do not apply to them because they are merely tasked with the protection of Richardson Bay and are not responsible for the SPD's independent determination of probable cause.  ECF No. 50 at 4.

Havel's malicious prosecution claims arising from the events on March 24, 2021, and May 25, 2021, fail because his amended complaint demonstrates that SPD had probable cause to charge and/or arrest him.  Regarding March 24, Powelson alleges that after he prevented Havel from destroying the Houseboat—including by intercepting Havel's patrol boat with his kayak, Havel called the SPD and made a criminal complaint that Powelson was interfering with his official duties as RBRA harbormaster.  ECF No. 34 ¶¶ 4–5.

Powelson argues that Havel should have known that Powelson's interference was "not illegal" because Havel (1) did not have a warrant to seize the boat, (2) knew or should have known that he was not following RBRA protocol for abating abandoned vessels, (3) did not have the consent of the owner of the Houseboat to destroy the vessel, and (4) knew Ortega was the lawful owner of the boat and had directed Powelson to stop its destruction.  *Id.* ¶ 6.

While the Court reads Powelson's allegations as suggesting that Havel stepped outside of his own lawful authority to seize the Houseboat, that does not by itself suggest that Havel falsely reported any fact to initiate the prosecution against Powelson.  *See Salcido*, 2025 WL 1307811, at *8 ("While Plaintiff does allege that Takeuchi, jointly with Kamei, 'reached out to Kamei's contacts at the Mountain View Police Department about the tow,' he does not allege that Takeuchi falsely reported facts. . . . It is not enough to allege that Takeuchi 'falsely claimed that Plaintiff had illegally towed their vehicle,' because a legal conclusion is not a falsely reported fact.").  Powelson alleges that Havel called SPD to report that Powelson was interfering with Havel's official duties as Harbormaster.  Nothing in the amended complaint suggests what Powelson

14

1    reported to be false—indeed, Powelson was at the scene specifically to stop Havel from

2    successfully seizing the Houseboat while in the scope of carrying out his authority as

3    Harbormaster.  Although Powelson disputes the underlying propriety of Havel's actions under the

4    requirements of RBRA protocol, Powelson's allegations show that Havel was in fact acting in his

5    official capacity when Powelson interfered to stop Havel from destroying the Houseboat.  Thus,

6    Havel did not falsely report any fact in calling SPD to report said interference, and Powelson has

7    not adequately stated a claim for malicious prosecution based on these events.  *See Stamas*, 2010

8    WL 1416866, at *13 (finding that the plaintiff failed to state a claim for malicious prosecution

9    because they did not make factual allegations that the defendants knowingly gave false reports that

10   plaintiff had committed a crime).

11        An almost identical analysis follows regarding Powelson's malicious prosecution claim for

12   the events of May 25, 2021.  There, Powelson alleges that he boarded various houseboats to stop

13   USACE and RBRA from destroying them, which led to Havel asking Mathers to arrest Powelson

14   for obstructing Havel's duties.  ECF No. 34 ¶¶ 72–73, 76.  While Mathers declined to arrest

15   Powelson on the scene, this confrontation did lead to a separate charge against Powelson for

16   interfering with Havel's duties as a public officer.  *Id.*  ¶¶ 76–77.

17        Powelson contends that he "was not interfering with any official duty, because under HNC

18   550 the boats were not to be destroyed after being seized by the Harbormaster."  *Id.* ¶ 75.  But the

19   Court finds that these contentions—for the same reasons outlined above—do not indicate that

20   Havel falsely reported any *fact* to the SPD so that it would bring a charge against Powelson.

21   Indeed, according to Powelson, Havel told Mathers that Havel did not have a warrant or title to the

22   boats.  *Id.* ¶ 74.  So while Powelson may be alleging that Havel acted outside the scope of his legal

23   authority, that is not by itself sufficient to state a claim that Havel initiated a malicious prosecution

24   against Powelson on May 25, 2021.[9]

25   _____

26   [9] Powelson styles his seventh cause of action, based on the events of May 25, 2021, in the
     amended complaint as one for "42 USC § 1983 – Fourth Amendment Malicious Prosecution and
27   Fabrication of Evidence."  ECF No. 34 at 22.  While it is unclear if Powelson intends to raise a
     separate "fabrication of evidence" claim, that cause of action as currently drafted likely also fails
28   to state a claim for the same reasons as those identified here.  *See Spencer v. Peters*, 857 F.3d 789,
     798 (9th Cir. 2017) (requiring a plaintiff to allege that a defendant official "deliberately fabricated

United States District Court
Northern District of California

Powelson has, however, adequately stated a claim for malicious prosecution based on his allegations surrounding the events of March 25, 2021. Powelson alleges that on March 25, 2021, Havel and Malcolm reported the Houseboat stolen despite being "informed that the Houseboat was in the possession of Michael Ortega, who they knew or should have known was in lawful possession." ECF No. 34 ¶ 46. Because Powelson alleges that the SPD officers relied on Havel and Malcolm's reporting of the Houseboat as stolen to arrest him, the police officers' decision to prosecute is not severed from Havel's initiation of the prosecution. *See Salcido*, 2025 WL 1307811, at *8 (explaining that a defendant may be liable for malicious prosecution where they "falsely reported facts to" the police "indicating that plaintiff has committed a crime"). And while there may be some ambiguity as to what the parties knew as to who the possessor of the Houseboat was, the Court resolves these ambiguities in favor of the plaintiff at the motion to dismiss stage. *See Knievel*, 393 F.3d at 1072. Furthermore, Powelson has sufficiently alleged that Havel initiated the prosecution with malice because he was frustrated with Powelson's public criticisms of him as Harbormaster and wanted to suppress Powelson's protest activities. *See* ECF No. 34 ¶¶ 7, 12, 13, 45. Accordingly, the Court declines to dismiss Powelson's malicious prosecution claim against the RBRA and Havel based on his allegations regarding the events of March 25, 2021.

### b.    SPD Defendants

For similar reasons as those discussed above, Powelson has also adequately stated a claim for malicious prosecution against the SPD Defendants based on the alleged events of March 25, 2021, but not of March 24, 2021, or May 25, 2021.

To support his malicious prosecution claim for the events of March 24, 2021, Powelson alleges that the SPD officers "knew [or] should have known, that the allegations Havel made against Plaintiff were without merit, and that there was no probable cause to charge plaintiff with a crime for interfering with Havel's conduct because" Havel told the officers that Havel did not have a warrant or title to seize the boat. ECF No. 34 ¶ 9. Powelson further alleges that it "was

---

evidence" to state a claim for fabrication of evidence).

obvious to any reasonable person that Havel was destroying the boat and not performing 'safekeeping' of the houseboat, and was acting outside of the scope of his own alleged authority." *Id.* But, as above, even assuming that Havel failed to follow the required procedures for seizing the Houseboat, this does not negate the probable cause that existed for the SPD Defendants to arrest Powelson for visibly interfering with Havel's duties as Harbormaster. The amended complaint makes clear that Powelson did interfere with Havel's official performance of seizing the Houseboat—whether or not that was compliant with the procedures cited by Powelson. And the same reasoning follows for Powelson's malicious prosecution claim based on the events of May 25, 2021, which also involved Powelson stopping Havel from destroying certain boats and being charged with interference with the duties of a public officer. *See* ECF No. 34 ¶¶ 73–77. Because it was "objectively reasonable for the [SPD Defendants] to suspect [that Powelson] had committed a crime" of interfering with Havel's official duties, Powelson has not adequately stated a claim for malicious prosecution for the events of either March 24, 2021, or May 25, 2021. *See Roberts*, 660 F.3d at 1164.

For the events on March 25, 2021, on the other hand, Powelson has adequately alleged that the SPD Defendants lacked probable cause to arrest him and initiated the prosecution with malice against him. Powelson alleges that SPD Defendants were informed by Ortega that he was the owner of the Houseboat and that Powelson had permission to be on the Houseboat.[10] ECF No. 34 ¶ 40. He thus argues that SPD Defendants knew or should have known that there was no probable cause to arrest him for trespass under Penal Code § 602(o), which ultimately requires an owner of the property—or their agent—to request the defendant to leave the property. *Id.* ¶¶ 42–43. Powelson also sufficiently alleges malice by alleging that SPD Defendants Padilla and Gregory charged him without probable cause to retaliate against him for his prior protest activity and for previously suing the city of Sausalito. *See id.* ¶¶ 10, 44. SPD Defendants counter that they had

---

[10] The Court notes that the SPD Defendants assert additional facts in their motion to dismiss that they argue illustrate why the police officers had probable cause to arrest Powelson on March 25, 2021. ECF No. 39 at 25–26. But because the Court must "accept all factual allegations in the complaint as true" in deciding a motion to dismiss, *Knievel*, 393 F.3d at 1072, the Court does not consider the SPD Defendants' factual allegations here.

United States District Court
Northern District of California

1    probable cause to charge Powelson because Powelson "admits that the competing possessory

2    claims regarding the houseboat had not resolved."  ECF No. 49 at 6 (citing ECF No. 34 ¶¶ 40-45).

3    But SPD Defendants misrepresent the amended complaint.  As summarized above, Powelson

4    specifically alleges that Havel admitted to not having title over the Houseboat and that Ortega told

5    SPD Defendants Ortega was the owner.  *See* ECF No. 34 ¶¶ 40, 43.  Reading the complaint in the

6    light most favorable to Powelson, the Court declines to dismiss Powelson's malicious prosecution

7    claim for the events of March 25, 2021.

8         SPD Defendants alternatively argue that Powelson has not adequately alleged that there

9    was a "favorable termination" to support his malicious prosecution claims.  ECF No. 39 at 21.

10   Specifically, they argue that the termination of Powelson's criminal case through a diversion

11   program of community service does not satisfy the standard for a favorable termination because

12   there was no "formal determination of guilt or innocence" and thus no indication that the superior

13   court believed that the case lacked merit.  *See id.* at 22–23.  The argument is not persuasive.  The

14   Supreme Court has specifically held that to succeed on a malicious prosecution claim, a plaintiff

15   "need only show that the criminal prosecution ended without a conviction" and not "that the

16   criminal prosecution ended with some affirmative indication of innocence."  *Thompson v. Clark*,

17   596 U.S. 36, 49 (2022).  The *Thompson* Court found that a voluntary dismissal without an

18   explanation from the judge or prosecutor satisfies the favorable termination element.  *Id.* at 49.

19   Since *Thompson* was decided, both the Ninth Circuit, *Duarte v. City of Stockton*, 60 F.4th 566,

20   572 (9th Cir.), *cert. denied*, 143 S. Ct. 2665 (2023), and at least three district courts have permitted

21   malicious prosecution claims to go forward notwithstanding the plaintiff's participation in a

22   diversion program. *See Brown v. City of Needles*, No. 5:23-CV-01118-MWC-SSC, 2025 WL

23   2369245, at *3 n.11 (C.D. Cal. Mar. 24, 2025), *report and recommendation adopted*, No. 5:23-

24   CV-01118-MWC-SSC, 2025 WL 2369372 (C.D. Cal. May 12, 2025); *Hollamon v. City of Los*

25   *Angeles*, 709 F. Supp. 3d 992, 999 (C.D. Cal. 2023), *aff'd*, No. 24-341, 2025 WL 927310 (9th Cir.

26   Mar. 27, 2025); *Dillon v. Nguyen*, No. 24-CV-04735-JST, 2025 WL 673645, at *3 (N.D. Cal.

27   Mar. 3, 2025).

28

United States District Court
Northern District of California

18

1

### 2. Fabrication of Evidence

2      A defendant is liable for fabrication of evidence if "(1) the defendant official deliberately

3   fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."

4   *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

5      Powelson asserts a fabrication of evidence claim against Defendants Mathers and Padilla

6   for all three incidents in March and May 2021.

7      For the reasons discussed above, Powelson's fabrication of evidence claim against Mathers

8   and Padilla based on the events of March 24, 2021, and May 25, 2021, fails because the SPD

9   officers on the scene had probable cause to arrest/charge Powelson, so his deprivation of liberty

10  was not caused by any alleged fabrication of evidence.  Powelson alleges that on March 24, 2021,

11  Mathers "fabricated without probable cause a police report that alleged PLAINTIFF was

12  'obviously trespassing' on USACE property, when any reasonable person could see PLAINTIFF

13  was not, because PLAINTIFF was in his kayak in the water below the high water mark."  ECF No.

14  34 ¶ 94.  And Mathers "fabricated without probable cause a police report that alleged PLAINTIFF

15  was 'interfering [sic] with RBRA official conduct' on USACE property, when in fact HAVEL had

16  informed MATHERS and GREGORY that he was not acting in official conduct, because he did

17  not have a warrant or exception to the warrant requirement to seize the Houseboat.  *Id.* ¶ 95.

18  Similarly, Powelson alleges that for the May 25, 2021, incident, Mathers "fabricated evidence

19  against PLAINTIFF by falsely attesting on a sworn affidavit submitted to the District Attorneys

20  Office that he witnessed PLAINTIFF trespassing on Marina Plaza Property, when any reasonable

21  observer would have known PLAINTIFF was not trespassing because PLAINTFF was below the

22  highwater mark, and therefore on public lands."  *Id.* ¶ 96.  In both instances, Powelson cites his

23  disagreement with the underlying legal determinations made by Mathers in his reports.  But "not

24  all inaccuracies in an investigative report give rise to a constitutional claim," *Spencer*, 857 F.3d at

25  798, let alone the accounts here—which even under Powelson's allegations reasonably reflected

26  Powelson's conduct in actively protesting and interfering with Havel's duties on what could have

27  been interpreted as Marina property.  Powelson's arguments would have been more appropriate as

28  defenses against the criminal charges against him, but they are not the bases for a constitutional

1    claim.

2        The Court, however, declines to dismiss Powelson's fabrication of evidence claim based

3    on the events of March 25, 2021. There, Powelson alleges that Havel, Malcolm, and Plisch had

4    spoken with Gregory, Rohrbacher, Frass, and Padilla to all agree "that they would all pretend the

5    RBRA and USACE was the rightful possessor of the Houseboat" to uphold a trespass on private

6    property charge against Plaintiff. ECF No. 34 ¶ 45. And as discussed above, Powelson alleges

7    that Ortega had informed Padilla that Ortega was the owner of the Houseboat and that Powelson

8    had permission to be on the boat. Drawing reasonable inferences in favor of Powelson, the Court

9    reads the amended complaint as alleging that Padilla had deliberately fabricated his account in the

10   police report by stating that the Houseboat had been stolen despite Ortega informing him

11   otherwise. As this was the basis of the trespassing charge against Powelson, this deliberate

12   fabrication caused Powelson's deprivation of liberty. *Spencer*, 857 F.3d at 798. However, as

13   Powelson's allegations regarding the events of March 25, 2021, only involve Padilla, the Court

14   dismisses the fabrication of evidence charge as to Mathers.

15                    **3.    Qualified Immunity**

16       SPD Defendants argue that Defendants Rohrbacher, Fraas, Gregory, Mathers, Padilla,

17   Vereios, and Clerici are entitled to qualified immunity on any Section 1983 claims against them.

18   ECF No. 39 at 28–31. The defense of qualified immunity protects "government officials . . . from

19   liability for civil damages insofar as their conduct does not violate clearly established statutory or

20   constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

21   U.S. 800, 818 (1982). In considering a claim of qualified immunity, the Court must determine

22   whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such

23   right was clearly established such that it would be clear to a reasonable officer that his conduct

24   was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

25       While courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has

26   noted that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises

27   special problems for legal decision making" because it requires the court to balance competing

28   rules: the prohibition on dismissing a complaint as long as it makes a claim to relief that is

plausible on its face and defendants' entitlement to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity requires the court "to decide far-reaching constitutional questions on a nonexistent factual record." *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004), *overruled in part on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (cleaned up); *see also Keates*, 883 F.3d at 1235 ("[O]ur decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions." (citation omitted)).

Rohrbacher, Fraas, Gregory, Mathers, Padilla, Vereios, and Clerici are not entitled to a blanket ruling of qualified immunity at this stage in the action because it is unclear from the amended complaint if their arrests of Powelson were justified or were based on sufficient probable cause such that those arrests constituted violations of clearly established law. Determining what clearly established precedent Powelson must identify involves, at least in part, determining: what the officers on the scene knew about the ownership of the boats; what the officers knew of Powelson's history of trespassing on USACE or private property; and what the officers' motives were in arresting Powelson. *See Mills*, 921 F.3d at 1169. The Court therefore denies SPD Defendants' motion to dismiss based on qualified immunity grounds. While SPD Defendants may ultimately prevail on many of the arguments they make now with respect to qualified immunity, because the qualified immunity analysis here turns on the specific facts of each alleged violation, the Court finds that the qualified immunity arguments are better suited to summary judgment.

### C.      Anti-SLAPP Motion

RBRA Defendants argue that all of the claims against them should be stricken under

United States District Court
Northern District of California

California's anti-SLAPP statute.  ECF No. 38.  However, "the anti-SLAPP statute does not apply to federal law causes of action."  *Gangland Prods., Inc.*, 730 F.3d at 955 n.3 (quoting *Hilton*, 599 F.3d at 901).  And because the Court grants the RBRA Defendants' motion to dismiss Powelson's state law claims against them without leave to amend, the Court declines to address their anti-SLAPP motion as to those claims.  *See Kime v. Adventist Health Clearlake Hosp., Inc.*, 254 F. Supp. 3d 1071, 1073 (N.D. Cal. 2017) ("Having carefully considered the pleadings and arguments of the parties, and for the reasons set forth below, the Court hereby Grants the motion to dismiss and Denies the motion for sanctions.  In light of the Court's decision, it declines to address the Anti–SLAPP motion.") (footnote omitted); *Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *7 (W.D. Wash. Aug. 20, 2014) (collecting cases declining to address an anti-SLAPP motion in light of dismissal of the relevant claims on other grounds).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part RBRA Defendants' and SPD Defendants' motions to dismiss, consistent with the discussion above.  In sum, the Court dismisses without leave to amend Powelson's second, sixth, and ninth causes of action under California's Bane Act; eighth cause of action under Section 1983 for violation of the First Amendment; eleventh cause of action for negligence; and twelfth cause of action for negligent training, supervision, and retention.  The Court dismisses with leave to amend Powelson's first cause of action for malicious prosecution based on the events of March 24, 2021; seventh cause of action for malicious prosecution and fabrication of evidence for the events of May 25, 2021; and tenth cause of action for fabrication of evidence, except as it pertains to a claim against Padilla for the events of March 25, 2021.  The Court declines to dismiss Powelson's fourth cause of action for malicious prosecution based on the events of March 25, 2021.

Within 21 days from this order, Powelson may file a second amended complaint solely to cure the deficiencies identified in this order.

Given that the Court has dismissed Powelson's state law claims without leave to amend, the Court declines to address RBRA Defendants' anti-SLAPP Motion.

/ / /

22

The case management conference scheduled for September 23, 2025 is continued to December 2, 2025 at 2:00 p.m.  An updated case management statement is due November 25, 2025.

**IT IS SO ORDERED.**

Dated:  September 22, 2025



JON S. TIGAR
United States District Judge